UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

DISABILITY RIGHTS NEW MEXICO,

    Plaintiff,

v.                                                   Case No. 1:22-CV-00954 JHR/JFR

ALISHA TAFOYA LUCERO, et al.,

    Defendants.

### DEFENDANTS' REPLY IN SUPPORT OF
### MOTION TO DISMISS FOR LACK OF STANDING (DOC. 9)

       On March 30, 2023, New Mexico Governor Michelle Lujan Grisham signed Senate Bill 425 (the "Act"), which authorizes - and provides a funding mechanism for - a comprehensive medication assisted treatment (MAT) program for all state and county corrections facilities. *See* Act, Exh. 1; Fiscal Impact Report, Exh. 2. The Act directs the Human Services Department, no later than December 1, 2023, to promulgate rules for the operation of statewide MAT programs in consultation with corrections officials who specialize in substance abuse disorder treatment. Exh. 1. The Corrections Department is to "expand and continue to operate currently existing" MAT programs for inmates. *Id*. Corrections must implement a program to continue MAT for incarcerated people who are booked into a state correctional facility no later than December 31, 2025. Corrections, as well as county jails, must also offer MAT to all inmates in state and county institutions by July 1, 2026.

Simply put, the Act is a game-changer. It not only directly addresses the Disability Rights of New Mexico's requested relief for a MAT continuity program, it also mandates MAT in all state and county correction facilities. *See* Exh. 1. Given the Act's breadth of coverage and its mandate to implement the program within a short timeframe, there is no reason to expend significant resources in litigating whether other laws warrant a prospective injunction. The State has already imposed, by statute, the legal obligation to implement the program. Further, the requested injunctive relief entails a myriad of details for safely and effectively dispensing controlled substances in prisons, including training staff, hiring employees, preventing diversion, overseeing the accompanying mental health care – which the HSD's rules must address by year's end anyway. *See generally* Jail-Based Medication Assisted Treatment found at https://www.ncchc.org/wp-content/uploads/Jail-Based-MAT-PPG-web.pdf. (discussing such complexities). The requested relief also invites conflicts with Prison Litigation Reform Act provisions that prohibit overly broad injunctions. *See generally* 18 U.S.C. § 3626.

The Act likely warrants a conference between the parties' counsel, but for now, this Reply will address the arguments in DRNM's Response, Doc. 17.

1. **DRNM's Response Fails to Show Associational Standing**

The DRNM relies predominantly on its status as a protection and advocacy (P&A) organization under "PAMII". *See* Doc. 17 at 6, 7-10. As explained below, although PAMII allows for organizations such as the DRNM to advocate for members, it does not displace Article III or the substantive, individualized elements

of the disability laws, the PLRA or Eighth Amendment. Further, the generic language in PAMII, authorizing legal actions to protect individuals with mental illness, 42 U.S.C § 10805, is not limitless and does not authorize P&A organizations to seek wide-ranging, complex equitable relief that is the equivalent of the legislative enactment here. *See, e.g., Parent/Pro. Advocacy League v. City of Springfield, Mass.*, 934 F.3d 13, 34 (1st Cir. 2019).

2. **DRNM's Constituents Must Exhaust Remedies under the PLRA**

Plaintiff claims that compliance with the PRLA is merely "a procedural prerequisite that has no bearing on the [plaintiff's] claims" or the requested relief. Doc. 17 at 12. DRNM argues that exhaustion of remedies is an affirmative defense and is irrelevant to the issue of standing. *Id*. DRNM also claims it has standing to represent unidentified, prospective inmates, arguing that the PLRA does not require exhaustion for future inmates. Id. at 11-12. These arguments misconstrue the Article III standing requirements and the plain language of the PLRA.

Here, the DRNM asserts that it has associational standing to act on behalf of its members, or more precisely, unidentified constituents. *See* Doc. 17 at 5-6. DRNM states that it "can assert standing on behalf of its members by demonstrating [first] that the organizations' members would otherwise have standing to sue in their own right." *Id*. at 3 (citing *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). To have standing in their own right to bring an action concerning the conditions of confinement, these constituents must have first exhausted their administrative remedies under the PLRA.

*Defendants' Reply in Support of Motion to Dismiss 3*

The Supreme Court in *Jones v. Bock* reiterated the PLRA's requirement that "no action shall be brought with respect to prison conditions under [42 U.S.C. 1983], or any other federal law by a prisoner confined in any jail, prison, or correctional facility unless administrative remedies are exhausted." 549 U.S. 199, 204, 127 S.Ct. 910, 914 (2007). Thus, for prisoner constituents to have standing in their own right to sue, they must have pursued and exhausted administrative remedies under the PLRA. The statutory text and the *Jones* holding are not ambiguous: ***"no action shall be brought"*** unless they have done so. *Id.* [emphasis added].

Nothing in *Jones* suggests that the Supreme Court intended to relax Article III standing requirements for P&A associations that rely on the standing of their constituents. *Jones* merely imposed a procedural rule governing how litigants plead PLRA compliance. *See* 549 U.S. at 211-12. The Court decided not to require inmates, who often appear *pro se*, to include detailed exhaustion allegations in their complaints. *Id.* at 213-14. The Court observed that the standard comports with the rules of exhaustion as well as notice pleading under Fed.R.Civ.P. 8. *Id.* at 212.

DRNM overreads *Jones*, arguing that its members need not comply with the PLRA because exhaustion is an affirmative defense and not "jurisdictional." Doc. 17 at 11. However, DRNM does not provide authority from the Supreme Court or a Circuit Court employing this distinction to override the PLRA's exhaustion requirement for associational standing under *Hunt*. The argument elevates form over substance and frustrates the Congressional purpose of the PLRA.

The Supreme Court's decisions on associational standing do not utilize a "jurisdictional" versus "affirmative defense" test. Rather, the Court has consistently employed *Hunt's* test of whether the "individual members have standing to sue in their own right." Because PLRA exhaustion is mandatory for DRNM's constituents to bring an action, *i.e.*, to sue in their own right, when the DRNM represents such constituents by proxy, it must demonstrate their standing under the PLRA.

The Tenth Circuit has similarly rejected the distinction the DRNM seeks to draw here. Following *Jones*, the Tenth Circuit explained that whether exhaustion is jurisdictional versus an affirmative defense is important "only when the defendant has waived or forfeited the issue: If exhaustion is a jurisdictional requirement, the district court must always dismiss if there has been a failure to exhaust. If exhaustion is not jurisdictional, the court must dismiss only if the issue has been properly presented for decision." *McQueen v. Colorado Springs School Dist. No. 11*, 488 F.3d 868, 873 (2007).

Here, the defendants presented raised exhaustion at the first opportunity, citing the grievance procedures. *See* Motion, Doc. 9 at 22; Doc. 9-3. DRNM has not the challenged grievance procedure, nor has it provided an allegation or evidence of exhaustion by any constituent. Accordingly, the DRNM has not shown that its constituents, whoever they are, have standing in their own right to bring the present lawsuit.

DRNM's argument also undermines the Congressional purpose of exhaustion. There is no reason why a P&A organization should be able to press their

*Defendants' Reply in Support of Motion to Dismiss 5*

constituents' claims without exhaustion: "[p]ut another way, it would not make sense to allow [the DRNM] to escape the exhaustion requirement" for the members it is purportedly representing. *Parent/Pro. Advocacy League ("P/PAL")*, 934 F.3d at 34. (discussing IDEA exhaustion). "Otherwise, associational standing in this type of suit would be inconsistent with the Congressional requirement of exhaustion" and "an easy way to circumvent it." *Id.; Cf. Anderson v. State*, 2022-NMSC-019 *51 (stating that the organization's claims "are brought purely in a representative capacity and depend here on the viability" of the constituent's claims).

In sum, there is nothing within PAMII or the PLRA that creates an exception for exhaustion when an organization is representing current prisoner constituents who must have individual standing in the first place.

***Future Inmates.*** DRNM also claims to represent future inmates, arguing that the PLRA does not require grievances by future inmates, and so, such inmates have standing without exhaustion. *See* Doc. 17 at 11-12. DRNM fails to recognize, however, that its claims for prospective inmates are not justiciable and do not confer Article III standing for a different reason: the claims are not ripe and DRNM cannot show injury in fact.

Courts in the Tenth Circuit will not resolve a dispute "if it rests upon contingent future events that may not occur as anticipated or indeed may not occur at all." *United States v. Bennett*, 823 F.3d 1316, 1326 (10th Cir. 2016) (citation and internal quotation omitted). This principle—the ripeness doctrine—derives from both constitutional and prudential concerns. *Id.* at 1325. The purpose of the

ripeness doctrine is to prevent the premature adjudication of abstract claims. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995).

"As with standing, mootness, and other justiciability doctrines, the values of avoiding unnecessary constitutional determinations and establishing proper relationships between the judiciary and other branches of the federal government lie at the core of ripeness policies." *Finnigan v. Mendrick*, No. 21-CV-341, 2021 WL 736228, at *5 (N.D. Ill. Feb. 24, 2021)(quoting 13B Charles Alan Wright et al., Federal Practice and Procedure § 3532.1 (3d ed. 2020)). "The ripeness doctrine ... asks whether the case has been brought at a point so early that it is not yet clear whether a real dispute to be resolved exists between the parties. In this sense, the ripeness requirement furthers the interests of judicial restraint by avoiding possible judicial interference with the other branches of government that would ultimately prove unnecessary if a live dispute were never to develop." *Id.* (quoting 15 James Wm. Moore et al., Moore's Federal Practice § 101.70 (3d ed. 2020).

"The need to avoid unnecessary entanglements is especially sensitive when, as here, the case involves a state agency (raising federalism concerns) on a medical issue (raising institutional competence concerns) in a custodial setting (raising prison-management concerns)." *Id.* (citations omitted)

Federal courts, including the New Mexico District Court[1], have considered whether it is premature for an inmate to assert ADA or Eighth Amendment claims based on failure to provide methadone or suboxone before a prison has custody and

---

[1] *See* proceedings at *S.B. v. Tafoya*, 1:21-cv-00402, including Doc. 43.

can conduct a medical screening. For example, in *Finnigan v. Mendrick*, No. 21-CV-341, 2021 WL 736228, at *5 (N.D. Ill. Feb. 24, 2021) (unpublished), the plaintiff claimed Eighth Amendment and ADA violations for a prospective incarceration without her regular methadone dose for her opioid use disorder. "She asks this Court to dictate what her medical care will be, before she has entered the Jail and before its medical team has had a chance to examine her." *Id.* The Court determined that the case was not yet ripe for adjudication:

> Plaintiff is asking this Court to dictate her medical care and decree what the Jail must do. But first, the Jail needs a chance to examine her and decide what treatment it is going to provide. At that point, there might be a dispute. And if there is a dispute, it will rest on real-world facts.
>
> In the end, the entire dispute might not come to pass, because she might get what she wants. If she doesn't, then at least the Court will know what the alternative treatment is before opining on whether it complies with the Constitution and the ADA. In the meantime, the complaint rests on a hypothetical scenario, so it is not yet ripe for the exercise of judicial power.

*Finnegan* at *5.

Thus, prospective inmates, assuming that they might later be DRNM constituents, do not have standing now because their claims are not yet justiciable. *Id.* Therefore, the DRNM also does not now have representational standing on their behalf. In sum, DRNM does not have Article III standing.

3. **PAMII Does Not Set Aside Prudential Concerns or Otherwise Nullify Consideration of Judicial Administration and Efficiency**

Aside from Article III, DRNM also does not have associational standing due to the individualized inquiries required under the substantive laws as well as the

sheer complexity and scope of the relief sought. DRNM attempts to dismiss this concern by claiming it seeks to address a "systemic" issue. However, plaintiff fails to account for the substantive requirements of the ADA that these determinations be made on a case-by-case basis. *See* Defendants' Motion Doc. 8 at 8-11. Here, the DRNM is seeking to impose an injunction directing Corrections to dispense various controlled substances as accommodations for unknown constituents, with varying medical histories, who have differing disabilities arising from a range of substance use disorders. Lawsuits involving medical needs under the Eighth Amendment involve similar individualized attention. The caselaw demonstrates that these disputes, when litigated, lead to varying and inconsistent results. *Id.* at 18 (comparing cases). Of course, any prisoner alleging a failure to accommodate under the ADA or deliberate indifference to a medical condition under the Eighth Amendment is free to seek redress individually through conventional means.

The DRNM brings this action under 42 U.S.C. § 10805(a)(1)(B), which contains a brief, generic authorization for a P&A organization to pursue legal remedies "to ensure the protection of individuals with mental illness who are receiving care or treatment in the State." Attempting to sidestep the necessary individualized inquiries, DRNM asserts that Congress, in enacting PAMII, abrogated the third prong of the *Hunt* test. DRNM's argument is based on the Ninth Circuit's decision in *Oregon Advocacy Center v. Mink,* 322 F.3d 1101, 1105 (9th Cir. 2003).

*Mink* involved an Oregon state law that allowed state criminal courts to find that criminal defendants were incapacitated from assisting in their defense. If so, state law then required the Oregon State Hospital to evaluate and treat such defendants under strict deadlines. The Hospital, however, regularly refused to accept defendants timely, leaving them incarcerated, in violation of their due process rights. Following trial, the District Court entered a narrow injunction requiring the State Hospital to accept the defendants within seven days.

On appeal, the Hospital contended that an organizational plaintiff did not meet the third prong of *Hunt* because the claim required the individual participation of the criminal defendants. The Ninth Circuit did not address this argument, determining instead that because PAMII authorized the organization to pursue legal remedies for the mentally ill, Congress implicitly abrogated the prudential considerations in the third prong of *Hunt.*

Here, DRNM seeks to extend *Mink,* arguing that PAMII ***always*** abrogates prudential concerns anytime a P&A organization is a plaintiff. Most Federal Circuits, including the Tenth, have neither considered nor adopted the abrogation reasoning in *Mink*, let alone determined that PAMII abrogates the third prong of *Hunt* across the board.[2] Moreover, other Circuits have rejected such a broad reading

---

[2] DRNM cites a Colorado District Court case, *Cunningham v. Fed. Bureau of Prisons*, 222 F.Supp.3d 959 (D.Co. 2015). *Cunningham* agreed with *Mink* generally but did not discuss abrogation of the *Hunt* factors directly. In fact, the Court found that the Eighth Amendment claim at issue did not require proof by individual members, which is the third *Hunt* factor *Id.* at 961. The case did not involve the breadth and complexity of the claims here, which seek a statewide injunction creating a scheme for dispensing various controlled substances to prisoners.

of PAMII when the relief requested involves massive, wide-ranging inquiries and remedies equivalent to a legislative enactment. *See P/PAL,* 934 F.3d at 34. *See also Mo. Prot. & Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 810 n.7 (8th Cir. 2007) ("Congress has not abrogated prudential standing requirements by expressly authorizing this type of global challenge to [public] programs absent the participation of individuals seeking redress of specific injuries.").

*P/PAL* is particularly instructive. The case involved claims that Springfield, Massachusetts and its School District violated Title II of the ADA by segregating approximately 230 students with mental health disabilities in an inferior school. Plaintiffs included a student asserting a class action, along with two organizations asserting associational standing, one of which was a P&A organization, the "DLC", invoking § 11805(a)(1)(B), like the DRNM here.

The First Circuit initially noted there were threshold insufficiencies because the student constituents had not exhausted their administrative remedies for standing. 934 F.3d at 34. The Court then considered the DLC's argument that PAMII "removed all prudential barriers to suits, including this one, that DLC might bring on behalf of its constituents", *id.* at 34-35, DRNM's same argument here.

The First Circuit disagreed. Although the Court acknowledged that organizations may bring suits under PAMII, the Court held that there was no indication in the PAMII statute that Congress broadly abrogated prudential standing concerns or even intended P&A organizations to bring a suit of such breadth and complexity. *Id.* at 34. The Court stressed that the ADA claims in the

case required "a string of individualized determinations" about each child's disability and treatment "posing challenges of judicial administration and efficiency" not present in ordinary PAMII cases. *Id.* at 35. The Court did not find DLC's representational standing appropriate when such individualized determinations under the ADA were necessary. *Id.*

This case presents the same problem, with justiciability challenges even greater in scale and complexity and which exceed the reasonable bounds of judicial efficiency and administration in a representational standing context. This is particularly true here where the New Mexico Legislative and Executive Branches have already acted, with near unanimity, to enact the requested MAT program. The Court should give the initiative the chance to succeed.

In sum, DRNM does not meet the Article III requirement of standing by demonstrating a constituent with a requisite injury who has exhausted their administrative remedy. Nor does DRNM overcome the prudential concerns over the individualized nature of the claims and the complexity of the relief the organization seeks. The case should be dismissed.

                                              LONG, KOMER & ASSOCIATES, P.A.
                                              *Attorneys for Defendants*

                                              */s/ Mark E. Komer*
                                              Mark E. Komer
                                              P. O. Box 5098
                                              Santa Fe, NM 87502-5098
                                              505-982-8405
                                              mark@longkomer.com
                                              email@longkomer.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of April 2023, I filed the foregoing **Reply in Support of Motion to Dismiss** electronically through CMECF, which caused the following counsel to be served electronically:

Lalita Moskowitz
Maria Martinez Sanchez
lmoskowitz@aclu-nm.org
msanchez@aclu-nm.org

Maxwell Kauffman
mkauffman@drnm.org

Katherine Loewe
kate@rjvlawfirm.com

*Attorneys for Plaintiff*

                                                    */s/ Mark E. Komer*
                                                    Mark E. Komer