IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DISABILITY RIGHTS NEW MEXICO**,

        Plaintiff,

v.                                                    No. 22-cv-954-WJ-JFR

**ALISHA TAFOYA LUCERO**, in her official capacity as Secretary of the New Mexico Corrections Department; **WENSCESLAUS ASONGANYI**, in his official capacity as Health Services Administrator of the New Mexico Corrections Department; and the **NEW MEXICO CORRECTIONS DEPARTMENT**,

        Defendants,

### MEMORANDUM OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

**THIS MATTER** comes before the Court upon Plaintiff's Motion for Attorneys' Fees (**Doc. 61**), Defendants' Response (**Doc. 64**), and Plaintiff's Reply (**Doc. 69**). Having considered the pleadings and the applicable law, the Court finds the Motion is well-taken and is, therefore, **GRANTED in part**.

### BACKGROUND

Because the parties are familiar with the facts, the Court needn't recite them in detail.

Back in December 2022, Plaintiff ("Disability Rights") filed a civil rights lawsuit (**Doc. 1**) alleging violations of the Americans with Disabilities Act, Rehabilitation Act, Affordable Care Act, and the Eighth Amendment. *See id.* **at 34–37**. Specifically, Disability Rights filed suit (as an association) on behalf of individuals with opioid use disorder—arguing that Defendants' "de facto blanket ban" on medication for opioid use disorder was unlawful. *Id.* **at 1–6**.

After requesting several stays (**Docs. 25, 27, 34, 41, 45**), the case ultimately settled (**Docs. 54–59**).[1] The Court ordered Disability Rights to submit a motion for fees and costs. *See* **Doc. 58**; *cf.* **Doc. 59 at ¶ 11**.

Consistent with the Court's order, Disability Rights submitted a motion for "reasonable and necessary attorneys' fees and litigation expenses." **Doc. 61 at 1**. Therein, Disability Rights requests an award of $166,671.62 (*id.* **at 9**).[2] Defendants argue the requested amount is excessive (**Doc. 64 at 2**) in light of Disability Rights' "limited success." *Id.* **at 3**. Defendants also argue the hours and fees are not reasonable—citing duplicative work and vague billables. *Id.*; *see also* **Doc. 64-1**. The Court now addresses the reasonableness of the claimed billable hours.

## DISCUSSION

District courts follow a two-step process when determining the reasonableness of attorneys' fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Jane L. v. Bangerter*, 61 F.3d 1505, 1509 (10th Cir. 1995). First, a court must determine whether an applicant is a "prevailing party" entitled to reimbursement. *Hensley*, 461 U.S. at 429. Second, a court must determine what constitutes a "reasonable" fee. *See Zinna v. Congrove*, 680 F.3d 1236, 1242 (10th Cir. 2012).

**I. Prevailing Party Status**

The Tenth Circuit applies a three-part test to ascertain whether a prevailing party achieved sufficient success to be entitled to an award of attorneys' fees. *See Ballard v. Muskogee Reg'l Med. Ctr.*, 238 F.3d 1250, 1254 (10th Cir. 2001) (citing *Phelps v. Hamilton*, 120 F.3d 1126, 1130 (10th Cir. 1997)). The Court looks to: "(1) the difference between the judgment recovered and the

---

[1] During this time, the New Mexico legislature also passed a law establishing a medication-assisted treatment program for incarcerated individuals. See NMSA 1978 § 24-1-5.11 (2023).
[2] In the Reply, Disability Rights explains the amount requested in the Motion was incorrect. The "correct" figured is purported to be $183,623.32. *See* **Doc. 69 at 1 n.1**; *see also* **Doc. 64 at 2 n.1**. But, as explained below, this figure is also incorrect. *See infra* ¶ II.A.

recovery sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose of the litigation." *Id.* (internal citations and quotations omitted).

The Supreme Court explained that a "judicially sanctioned change in the legal relationship of the parties" is necessary for prevailing party status. *Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Hum. Res.*, 532 U.S. 298, 605 (2001).[3] At its core, *Buckhannon* explains "the term 'prevailing party' does not authorize an award of attorneys' fees when the plaintiff achieves the desired result through legislative—not judicial—action." *McSally v. Rumsfeld*, 2002 U.S. App. LEXIS 5679, at *2 (D.C. Cir. Apr. 8, 2005) (unpublished and per curiam) (citing *Buckhannon*, 532 U.S. at 601 & 604–06). Rather, a prevailing party needs to either: (1) "secure a judgment on the merits," or (2) obtain a "court-ordered consent decree." *Buckhannon*, 532 U.S. at 600; *see also Steven R.F. v. Harrison Sch. Dist. No. 2*, 924 F.3d 1309, 1316 n.7 (10th Cir. 2019) (same).

A judicially enforceable settlement also counts. *See Farrar v. Hobby*, 506 U.S. 103, 113 (1992) ("No material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, **or settlement** against the defendant." (emphasis added)); *see also Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1237 (10th Cir. 2018). But if there is "no judicial involvement in approving [a] settlement agreement," then a plaintiff is not considered a prevailing party. *Bell v. Bd. of Cnty. Comm'rs*, 451 F.3d 1097, 1101 (10th Cir. 2006). There must be "some official judicial approval of the settlement . . . ." *Verlo v. City & Cnty. of Denver*, 789 F. App'x 709, 713 (10th Cir. 2019) (unpublished) (citation omitted).

---

[3] In the OPEN Government Act of 2007, Congress amended 5 U.S.C. § 552(a)(4)(E). *See* Pub. L. No. 110-175, 121 Stat. 2524 (2007). As a result, the *Buckhannon* holding—as applied to FOIA actions—was abrogated. But this isn't a FOIA case. And *Buckhannon*'s reasoning remains solid. *See Biodiversity Conservation All. v. Stem*, 519 F.3d 1226, 1229–1230 (10th Cir. 2008); *Sanchez v. Bd. of E. N.M.*, 361 F. App'x 980, 983 (10th Cir. 2010) (unpublished).

Thus, "[w]hile the operative event here was a settlement . . . [Tenth Circuit] case law is well-established that a party may prevail through settlement as well as through a merits ruling." *Bell*, 451 F.3d at 1102 (citing *Sinajini v. Bd. of Educ. of San Juan Sch. Dist.*, 233 F.3d 1236, 1240 (10th Cir. 2000) (following *Maher v. Gagne*, 448 U.S. 122, 129 (1980)); *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1194 (10th Cir. 1998) (following *Farrar*, 506 U.S. at 111)).

Disability Rights sought to "requir[e] Defendants to provide continuity of MOUD . . . to individuals in NMCD custody." **Doc. 1 at 38 ¶ d**. As a result of the Settlement Agreement, this MOUD continuity now exists. *See* **Docs. 54, 58, 59**; *see also* **Doc. 69 at 10**. Therefore, because the parties entered into a judicially enforceable settlement agreement[4] (which changed the legal relationship of the parties),[5] Disability Rights is a prevailing party.

**II. Reasonableness**

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Valdez v. Macdonald*, 66 F.4th 796, 836 (10th Cir. 2023) (quoting *Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1176 (10th Cir. 2010) (quoting *Hensley*, 461 U.S. at 433)). This is called the "lodestar" analysis. *Hensley*, 461 U.S. at 433; *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). This calculation is simply an approximation. It does it require "mathematical precision" or "bean-counting." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005).

---

[4] This agreement provides "enduring change" in the parties' legal relationship—rather than an unawardable "fleeting success." *Lackey v. Stinnie*, 604 U.S. __, 2025 U.S. LEXIS 866, at *15 & 17 (2025). Although the settlement agreement has an expiration date, it is not of the same nature as a plaintiff who gains only a preliminary injunction but is then denied a permanent injunction. *See id.* at *16–17. Disability Rights success was not the result of winning a temporary restraining order or preliminary injunction. And based on the Supreme Court's reversal of the Fourth Circuit in *Lackey*, it appears that any merits-based resolution is sufficiently "enduring." This is particularly true given the dissent's perspective—which explains "a court's conclusive final judgment" is required for prevailing party status. *Id.* at *32 (Jackson, J., dissenting).
[5] *See Lackey*, at *15 & 17 (explaining a party prevails if there is a "material alteration of the legal relationship of the parties" that is "judicially sanctioned").

4

In fact, the Court may adjust upward or downward from the lodestar, as necessary. *Blum v. Stenson*, 465 U.S. 886, 888 (1984).

The Court begins with the reasonableness of the rates charged. After determining the billable rates are reasonable, the Court then evaluates the reasonableness of the billable hours expended.

### *A. Reasonable hourly rate*

Are the requested fees "reasonable"? *Blum*, 465 U.S. at 897. At the outset, the Court notes that there is no objection to the proposed hourly rates charged by Plaintiff's counsel nor is there any claim that the hourly rates are not reasonable. *Compare* **Doc. 61 at 9**, *with* **Doc. 64**. Disability Rights justifies their requested rates through affidavits of counsel. *See* **Doc. 61-2**[6] (Gardner and Kauffman affidavits); **Doc. 61-3**[7] (Martinez Sanchez and Moskowitz affidavits); **Docs. 61-4 & 61-5**[8] (Loewe and Villa affidavits). An additional affidavit (**Doc. 61-6**) was provided regarding "prevailing market rates in the New Mexico legal community." *Id.* **at 1**.

Upon review, the requested rates are in lockstep with the legal community in the state (and practice area). *See* **Doc. 61-6** (citing cases); *see also* **Doc. 64** (failing to object to the hourly rates). The Court finds that the hourly rates charged by Plaintiff's counsel are reasonable and so the Court's lodestar calculation will, therefore, use the requested hourly rates.[9]

---

[6] Attorneys Gardner and Kauffman are in-house counsel for Disability Rights. *See* **Doc. 61 at 9**.
[7] Attorneys Martinez Sanchez and Moskowitz are attorneys for the ACLU. *See id.*
[8] Attorneys Loewe and Villa also represented Disability Rights. *See id.*
[9] Here, Disability Rights brought suit on behalf of individuals who "are qualified individuals with a disability—OUD." **Doc. 69 at 12** (citing **Doc. 1 at ¶¶ 195–197**). In fact, Defendants agree that "the plaintiff did not bring an action on behalf of any specific, identified prisoner constituent." **Doc. 64 at 9**. As such, the Prison Litigation Reform Act ("PLRA") does not apply.

Stated another way, Disability Rights is not a prisoner confined to a correctional facility—meaning the PLRA fee award cap in 42 U.S.C. § 1997e(d)(3) does not apply. *See, e.g., Trueblood v. Wash. State Dep't of Soc. & Health Servs.*, No. 14-cv-1178, 2016 U.S. Dist. LEXIS 142113, at *6–7 (W.D. Wash. Oct. 13, 2016); *Ala. Disabilities Advoc. Program v. Wood*, 584 F. Supp. 2d 1314 (M.D. Ala. 2008); *Trivette v. Tenn. Dep't of Corr.*, No. 20-cv-276, 2024 U.S. Dist. LEXIS 120019, at *63–64 (M.D. Tenn. July 9, 2024) (explaining, with respect to the PLRA, that "Congress chose to enact a specific limitation on litigation *by*

\* \* \*

Disability Rights requests the following as attorneys' fees (**Doc. 61 at 9**):

| Attorney | Hours | | Rate | | Total |
|---|---|---|---|---|---|
| Maria Martinez Sanchez | 57.66 | x | $300 | = | $17,298.00 |
| Lalita Moskowitz | 81 | x | $200 | = | $16,200.00 |
| Tim Gardner | 130.6 | x | $300 | = | $39,180.00 |
| Max Kauffman | 177.1 | x | $200 | = | $35,420.00 |
| Katherine Loewe | 172.2 | x | $325 | = | $55,965.50 |
| Ryan Villa | 17.3 | x | $375 | = | $6,487.50 |
| Attorneys' fees total[10] | 635.86 | | | = | $170,551.00 |
| Tax and costs | | | | = | $13,474.82 |
| Total | | | | = | $184,025.82 |

In the motion, Disability Rights lists $166,671.62 as the "total fees, tax and expenses." **Doc. 61 at 9**. But then in the Reply, Disability Rights states the "correct amount is $183,623.32." **Doc. 69 at 1 n.1**. According to counsel, "[t]his correct amount matches the amounts in the invoices submitted . . .[in] **Docs. 61-2 to 61-4**." But that's not quite right. As shown above, the figure requested by Disability Rights when adding the amounts listed is $184,025.82.

Math is tough. And these filings are proof of that. As such, the Court now cross-checks the calculations and engages in so-called "bean-counting." *Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1267 (10th Cir. 2023) (quoting *In re Rite Aid*, 396 F.3d at 306). In so doing, the Court turns to the billing records. *See* **Docs. 61-2, 61-3, 61-4**.

Let's begin with Disability Rights' in-house counsel. *See* **Doc. 61-2**. Attorney Gardner claims $39,180 (*id.* at 8) for 130.6 hours of work. And Attorney Kauffman claims $35,420 for 177.1 hours of work. *Id.* at 18. This equals $74,600. Taxes in the amount of $5,688.25 are also

---

prisoners, not litigation *about* prisoners by organizations . . . ." (emphasis in original)); *cf. Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010).

[10] This subtotal excludes the gross receipts tax ("GRT"), costs, and filing fee. *See* **Doc. 61 at 9**.

requested—bringing the total to $80,288.25. But the reply (**Doc. 69 at 1 n.1**) requests a total of $83,455. *See* **Doc. 61-2 at 18** ("DRNM total = $83,455.").

Next, the ACLU billed around one hundred and forty hours—thereby claiming $17,298 and $16,200[11] for Attorneys Martinez Sanchez and Moskowitz, respectively (**Doc. 61 at 9**). But upon reviewing the billing statement, this amount billed is less than the amount claimed. *Compare* **Doc. 61 at 9** (billing 81 hours), *with* **Doc. 61-3 at 19** (billing 67.2 hours).

Finally, the Law Office of Ryan Villa requests a total of $62,618.20 (before tax) for around two hundred hours of work. **Doc. 61-4 at 12**. Approximately 25% of these billed hours are for work on the instant feepetition. *See id.*; *see also* **Doc. 69-1**. As explained later, billing fifty hours for fee work and one hundred and fifty hours for merits work is excessive.

### B. Hours reasonably expended

This is where the rubber meets the road.

The case celebrated its first birthday just before it settled; but the case was stayed by stipulation of the parties eight months of its life. Even so, Disability Rights claims they expended approximately six hundred and fifty hours on this litigation. *See* **Doc. 61 at 9**. That's too many hours charged by too many attorneys. In layman's terms, there were too many cooks in the kitchen on Plaintiff's side.

This Complaint was filed on December 15, 2022 (**Doc. 1**). Defendants filed a Motion to Dismiss (**Doc. 9**) in January 2023. By April, though, the case was stayed. *See* **Docs. 25 & 26**. And

---

[11] In the motion, counsel claims that Attorney Moskowitz billed eighty-one hours of work at $200. *See* **Doc. 61 at 9**. Mathematically, this equals $16,200. And, again, that's the amount the motion requested (*id.*).

But the total amount listed in her affidavit is $13,440. *See* **Doc. 61-3 at 19**. That's because she marked 13.8 hours as "NOT BILLABLE." *Id.* **at 12–19**. Thus, her total billable hours are *not* 81—but instead 67.2. The Court finds the motion incorrectly states the billable hours and gives decisive weight to Attorney Moskowitz's affidavit disclaiming certain hours.

7

it remained stayed—per the parties' joint request (**Doc. 45**)—until it ultimately settled in December 2023 (**Doc. 54**).

While recognizing the litigations skills and positive reputations of Disability Rights' attorneys, the Court concludes the requested hours—and, therefore, amounts—are excessive.

\* \* \*

Disability Rights conducted pre-filing research on the claims, drafted a Complaint, litigated a motion to dismiss, and engaged in settlement negotiations. There are essentially four "buckets" that counsels' efforts can be placed into.

First is the pre-filing research and the Complaint. These efforts started the case.

Next is motions practice. Here, that involved responding to a motion to dismiss.

Third, counsel engaged in settlement negotiations.

The fourth bucket is a catchall for miscellaneous work.

As to the Complaint, counsel billed approximately one-hundred and fifty hours for research and drafting. *Cf.* **Doc. 64 at 8**. In this Court's view, that is unreasonable. *See, e.g., Lilly v. City of N.Y.*, No. 16-cv-322, 2017 U.S. Dist. LEXIS 129815 (S.D.N.Y. Aug. 15, 2017) (awarding 50.3 hours of reasonable attorneys' fees in civil rights action where case was resolved nine months after filing of complaint and there was limited discovery), *rev'd in part on other grounds*, 934 F.3d 222 (2d Cir. 2019); *Wise v. Kelly*, 620 F. Supp. 2d 435, 455 (S.D.N.Y. 2008) (finding 81.4 hours to prepare a 42-page Complaint in a § 1983 class action was not excessive); *Berry v. N.Y. State Dep't of Corr. Servs.*, 947 F. Supp. 647, 651–52 (W.D.N.Y. 1996) (reducing billed hours in a civil rights and RICO case because "it would be reasonable for a litigation associate to spend approximately 50 hours to draft a complaint"); *ACLU of Ga. v. Barnes*, 168 F.3d 423, 432 (11th Cir. 1999)

(finding that, in a § 1983 action, counsel should have been able to draft a complaint in less than 40 hours).

Nearly two hundred hours were billed for responding to the motion to dismiss. This is not reasonable. *See infra* ¶ II.B.1–3.

Third, approximately one hundred and seventy-five hours were billed for the settlement efforts. *See* **Docs. 61-2**, **61-3**, **61-4**; *see also* **Doc. 64 at 12**. Again, the Court views this as unreasonably high. The Proposed Settlement Agreement (**Doc. 54-1**) is nine pages long. *See* **Doc. 64 at 12–13**.

Finally, the remaining hundred hours of billables are for strategy, communication, meetings, and research not attributable to the preceding categories. The Tenth Circuit has noted "time spent reading background material designed to familiarize the attorney with the area of the law would normally be absorbed into a firm's overhead" and therefore is presumptively unreasonable to charge to an adversary. *Garrett v. Principal Life Ins. Co.*, 557 F. App'x 734, 738 (10th Cir. 2014) (unpublished) (quoting *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1253 (10th Cir. 1998)). This scenario is exactly what happened here so these hours must also be reduced.

Having set the stage, the Court now scrutinizes counsels' billing records to "ensure that [Disability Rights] . . . exercised 'billing judgment'" by "winnowing the hours actually expended down to the hours reasonably expended." *Case*, 157 F.3d at 1250 (quoting *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983)).

### *1. Block billing*

In total, Disability Rights billed approximately two hundred hours for responding to the motion to dismiss. *See* **Doc. 61-2 at 5 & 15–16**; **Doc. 61-3 at 5–6 & 14–17**; **Doc. 61-4 at 5–6**. This means the requested fee award for the Response is more than $50,000. To be fair, the

Response (**Doc. 17**) is thirty-five pages. But even broken down, that means roughly six hours were billed per page.[12]

In the Court's view, the billables devoted to the Response are a bit much. As an example, 7.5 hours blocked billed in back-to-back-to-back days. **Doc. 61-2 at 15**. During one of those days, another 3 hours are billed (but not charged). Six to seven hours is the norm for billing. *See Goetz v. Ricketts*, 632 F. Supp. 926, 929 (D. Colo. 1986) (citing *Ramos*, 713 F.2d at 552). Because billing nonstop periods of time in excess of 6 hours is atypical, the Court questions these billables in "excess of the norm." *Ramos*, 713 F.2d at 554.

The Court will reduce Disability Rights hours to the usual[13] number of workdays to respond (fourteen) multiplied by the number of reasonable billable hours (six)—for a total output of eighty-four hours. This is more than fair.

* * *

The reasonableness inquiry must also account for the fact five attorneys were researching, writing, and editing the same work-product. *See* **Doc. 61-2 at 5 & 15–16**; **Doc. 61-3 at 5–6 & 14–17**; **Doc. 61-4 at 5–6**. This is a natural segue into the next justification for a reduction.

---

[12] Upon review, courts far and wide agree that an hour per page is reasonable. *See, e.g., P.N. v. Clementon Bd. of Educ.*, No. 02-cv-1351, 2007 U.S. Dist. LEXIS 29289, at *38 (D. N.J. Apr. 19, 2007) (reducing the award of billable time for preparing "an eight-page opposition brief" from 30 hours to 10 hours); *Siragusa v. Arnold*, No. 12-cv-4497, 2015 U.S. Dist. LEXIS 15306, at *18 (N.D. Tex. Feb. 9, 2015) (finding "15.5 hours on a thorough and successful 13-page motion" was reasonable); *Farmer v. Astrue*, No. 09-cv-2505, 2010 U.S. Dist. LEXIS 124778, at *9 (D. Kan. Nov. 23, 2010) ("1.1 hours per page in general would not be an unreasonable time to spend writing . . . ."); *Booker v. Berryhill*, No. 16-cv-00299, 2017 U.S. Dist. LEXIS 128421, at *4 (W.D.N.C. Aug. 14, 2017) (finding one hour of drafting time per page to be reasonable); *Freestream Aircraft USA Ltd. v. Chowdry*, No. 16-cv-81232, 2017 U.S. Dist. LEXIS 174506, at *8 (S.D. Fla. Oct. 20, 2017) ("It should not have taken over 22 collective hours to draft and finalize a 12-page motion."); *WCM Indus. v. Prier Pods.*, No. 04-cv-1064, 2007 U.S. Dist. LEXIS 15314, at *4 (D. Colo. Mar. 5, 2007) (concluding that "84 hours to draft a 23 page brief" is "unreasonable").

[13] Defendants agreed (**Doc. 14**) to provide Disability Rights with an extension to respond to the motion to dismiss. Then, when plaintiffs' counsel needed more time, Defendants agreed (**Doc. 15**). In this Court's view, it is unreasonable for plaintiffs' counsel to receive a billable windfall because they were provided with more than double the routine response period.

*2. Duplicative billing*

Some of the hours claimed are duplicative in nature. *See Ramos*, 713 F.2d at 553–54 (explaining multiple attorneys performing the same tasks should not be compensated). While the Court understands there will be some overlap in tasks, the bills reflect significant overlap on the same aspects of the litigation. As mentioned above, five attorneys: (1) reviewed and analyzed the motion to dismiss, (2) strategized, (3) conducted legal research, (4) wrote, (5) reviewed, and (6) edited the Response. Some additional reduction for double billing is necessary—as counsel should have exercised better billing judgment.

Let's look at another example: meetings. Four attorneys billed for the same meeting on September 2, 2022. *See* **Doc. 61-2 at 3**; **Doc. 61-3 at 8 & 18**; **Doc. 61-4 at 3**. And multiple attorneys also billed for meetings on: (1) April 19, 2022; (2) April 27, 2023; and (3) June 20, 2023. *See* **Doc. 61-2 at 6**; **Doc. 61-3 at 5 & 9**; **Doc. 61-4 at 3 & 6**.

Generally speaking, "excessive, redundant, or otherwise unnecessary" hours should be excluded from a fee request. *See Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1204 (10th Cir. 1986) (citation omitted). When multiple attorneys bill for attending the same meeting or communicating with each other the Court considers the entries duplicative. *See In re Mullins*, 84 F.3d 459, 467 (D.C. Cir. 1996); *see also Dun-Rite Home Improvements, Inc. v. Dun-Rite, LLC*, No. 15-cv-316, 2016 U.S. Dist. LEXIS 40329, at *21 (D. Colo. Feb. 2, 2016); *Seven Signatures Gen. P'ship v. Irongate Azrep BW LLC*, 871 F. Supp. 2d 1040, 1055 (D. Haw. 2012).

The double-billed hours need be reduced.

\* \* \*

Counsels' records also include billable hours many months in advance of the Complaint. In fact, some claimed hours date back to February, March, and April of 2022—ten, nine, and eight

11

months before the inception of this case. *See* **Doc. 61-4 at 3**; **Doc. 61-3 at 9**; **Doc. 61-2 at 11**. This is perhaps more of a potpourri observation than critique of duplicative billing.

The Court is not saying that pre-litigation fees are disallowed. Pre-litigation work is absolutely allowed. *See Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emps.*, 571 U.S. 177, 189–90 (2014) (investigation, preliminary legal research, and drafting demand letters are "standard preliminary steps toward litigation"). But are the dozens of hours billed more than six months pre-filing *reasonable*? Not entirely. *See Harwood v. Am. Airlines, Inc.*, No. 17-cv-484, 2019 U.S. Dist. LEXIS 138844, at *9–10 (E.D. Va. May 16, 2019) (reducing billables for pre-suit actions a year before the Complaint was filed). Especially when in-house counsel, a law firm, and the ACLU all undertook pre-litigation billing—thereby duplicating efforts.

Some of this billed activity is excessive and need be reduced.

### *3. In-house billing*

Defendants have not provided the Court with any authority that expressly disallows fee awards for work performed by in-house counsel. *See* **Doc. 64 at 16–17**. Rather, awarding attorneys' fees "for in-house counsel [is] appropriate where counsel is performing legal work that would otherwise be performed by outside counsel." *Procter & Gamble Co. v. Weyerhouse Co.*, 711 F. Supp. 904, 906 (N.D. Ill. 1989). This Court does not find that awarding attorneys' fees to in-house counsel results in an impermissible windfall (as other courts have). *See Video-Cinema Films, Inc. v. CNN, Inc.*, Nos. 98-cv-7128, -7129, & -7130, 2004 U.S. Dist. LEXIS 1428, at *19–20 (S.D.N.Y. Feb. 3, 2004); *Stewart v. Capital City Mortg. Corp. (In re Stewart)*, No. 13-46, 2004 Bankr. LEXIS 2185, at *53 (Bankr. D.D.C. Nov. 10, 2004).

Nevertheless, some adjustments are necessary in consideration of in-house counsel's time that constitutes the "general mission" (so to speak) of Disability Rights—as contrasted with the performance of necessary litigation tasks in this case. For example, billing entries for "co-counsel strategy" meetings and emails are not sufficiently particular as to this case. *See* **Doc. 62-1,** *passim*. The billable hours from Attorneys Gardner and Kauffman also frequently reference one another—indicating some of these hours are more aligned with their traditional in-house work. Moreover, many of these entries fail to document what matters were discussed, how they were related to the case, or if they advanced the instant litigation.

In making these relatively minor adjustments, the Court notes that Defendants specifically identified the entries from in-house counsel that they believe to be improper (**Doc. 64-1**). And the Court agrees that some of these billed hours are insufficiently detailed. *Cf. United States ex rel. Superior Steel Connectors Corp. v. RK Mech. Inc.*, No. 11-cv-1488, 2012 U.S. Dist. LEXIS 112524, at *11 (D. Colo. Aug. 10, 2012). To be sure, compensable litigation work is part of what Disability Rights' in-house counsel billed for. But other aspects of their billables are more mundane and not immediately traceable to this case—such as strategy and communication with a "client." *See* **Doc. 62-1**[14] (billing "strategy"); *see also Ra v. Orange Vill.*, No. 15-cv-2416, 2017 U.S. Dist. LEXIS 68272, at *6–7 (N.D. Ohio May 4, 2017) (discussing when in-house counsel work is duplicative); *Buttar v. Hearst Communs., Inc.*, No. 21-cv-5566, 2023 U.S. Dist. LEXIS 67911, at *13–14 (N.D. Cal. Apr. 18, 2023) ("strategizing" as in-house counsel is not billable).

### C. Partial success

---

[14] Plaintiff Disability Rights agreed that "no NMCD inmate, in an individual capacity, is a named party in this action." **Doc. 59 at 2 ¶ 2**. And it doesn't appear that Disability Rights' in-house counsel billed for meeting with any notional individuals. But other counsel did. *See* **Doc. 61-3 at 9** (billing for "meeting w client" and "plaintiff"); **Doc. 61-4 at 3** (billing for "meet with client" and "call with constituent"); *but see* **Doc. 61-3 at 15 & 18** (marking as "NOT BILLABLE" time spent "with client").

The most critical factor in determining the reasonableness of a fee award is the degree of success obtained. Defendants say the Court should reduce the award amount because Disability Rights achieved limited success. *See* **Doc. 64 at 1**.

The question here is "how successful was the lawsuit"? To answer this question, the Court looks to the gap between the causes of action and requested relief in the Complaint (**Doc. 1**) vis-à-vis the outcome in the settlement agreement (**Docs. 54, 58, 59**).

In the Complaint, Disability Rights sought injunctive and declaratory relief "requiring Defendants to provide continuity of MOUD, including agonist MOUD (methadone and buprenorphine), to individuals in NMCD custody." **Doc. 1 at 38 ¶ d**. Their requested relief also included continuity of care for recently pregnant women. *Id.* **at ¶ a**. So, the fact Disability Rights recovered no damages is immaterial. Instead, the degree of success—*i.e.*, the relief—is what matters.

Defendants agreed to implement a treatment program for MOUD. *See* **Doc. 59 at ¶ 6**. The program also applied to "women currently receiving buprenorphine . . . once they are no longer pregnant or lactating." *Id.* **at ¶ 6h**. At the same time, no declaration was entered as to the Rehabilitation Act, Affordable Care Act, Americans with Disabilities Act, or Eighth Amendment. *See id.* **at ¶¶ b & c**. Nor was a permanent injunction issued. *Id.* **at ¶ d**. And the Court declined to assume continuing jurisdiction, as requested. *Id.* **at ¶ e**.

At the end of the day, none of the four claims in Disability Rights' Complaint were meritorious.[15] Still, a sizeable portion of their requested relief was secured. *See* **Doc. 69 at 10**

---

[15] Disability Rights says they "prevailed" on "the ADA claims." **Doc. 61 at 8**. But "expanding access to MOUD to people in Defendants' custody," *id.*, does not necessarily mean the ADA claim was meritorious. Defendants argue that "DRNM did not obtain a judgment determining that Defendants violated the ADA . . . ." **Doc. 64 at 2**. Disability Rights pushes back (**Doc. 69 at 8–9**).
   To be sure, the Settlement vindicated "federal rights," **Doc. 59 at ¶ 11b & c**. But even so, there is no declaration that Defendants failed to comply with the ADA, as requested. *See* **Doc. 1 at 38 ¶ b**. At the

("Plaintiff achieved its goal of ending Defendants' prohibition on MOUD continuity and implementing a program to protect the health and safety, not to mention the federal rights, of DRNM's constituents."). Based on Disability Rights' partial success, the Court finds that a reduction of 50% is appropriate. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974) (explaining "results obtained" is a valid consideration).

\* \* \* \* \*

Disability Rights spent approximately 20% of their time on the Complaint. Around 30% of their hours were devoted to responding to the motion to dismiss. The settlement comprised another 25% of their billables. And fee work neared 10%. In light of these findings, the Court's lodestar calculation is as follows:

659.06 hours billed

-329.53 (reduced by 50% for partial success)

= 329.53 hours

-65.9 (reduced by 20% for excessive, vague, and duplicative billing)

= Total reasonable hours: 263.63

| Attorney | Hours Claimed | Lodestar | | Rate | | Total |
|---|---|---|---|---|---|---|
| Maria Martinez Sanchez | 57.66 | 23.07 | x | $300 | = | $6,921 |
| Lalita Moskowitz | 81 | 32.4 | x | $200 | = | $6,480 |
| Tim Gardner | 130.6 | 52.24 | x | $300 | = | $15,672 |
| Max Kauffman | 177.1 | 70.84 | x | $200 | = | $14,168 |
| Katherine Loewe | 183.5 | 73.4 | x | $325 | = | $23,855 |
| Ryan Villa | 29.2 | 11.68 | x | $375 | = | $4,380 |
| Total | 263.63 | | | | = | $71,476 |

---

end of the day, it is immaterial whether the attorneys' fees are awarded under 42 U.S.C. § 12205 (ADA), 29 U.S.C. § 794a (Rehabilitation Act), or 42 U.S.C. § 1988. Disability Rights prevailed—and attorneys' fees are appropriate.

Myriad meetings were overbilled. And, based on vague billing statements, it's impossible to tell if the work charged is related to Disability Rights' success. Was it the claim under the Americans with Disabilities Act, Rehabilitation Act, Affordable Care Act, or the Eighth Amendment that secured Disability Rights' success? *See* n.12. And were those hours—as billed—attributable to the reason for the success? Again, the Court can't tell based on the records.

Even so, two hundred and sixty-three hours is reasonable here. Researching, writing, and editing a: (1) Complaint, (2) Response to the Motion to Dismiss, and (3) Settlement Agreement were doable in seventy-five billable hours each. *See supra* ¶ II.B. (noting that eighty-four hours to respond to a motion to dismiss was generous). The reductions for partial success[16] and vague billing "do rough justice," even if it does not achieve auditing-level perfection. *Fox v. Vice*, 563 U.S. 826, 838 (2011).

**III. Time Spent on Fee Award**

Last but not least: the fee award litigation. The Tenth Circuit "generally allows recovery of fees for attorneys' work in seeking attorneys' fees." *Hernandez v. George*, 793 F.2d 264, 269 (10th Cir. 1986) (citing *Ramos*, 713 F.2d at 558). Such requests must still be reasonable. *See Case*, 157 F.3d at 1254 ("An award of **reasonable** attorneys' fees may include compensation for work performed in preparing and presenting the fee application." (quoting *Mares*, 801 F.2d at 1205)).

Ten or twelve hours for a fee petition is reasonable. *See O Centro Espirita Beneficente Uniao Do Vegetal in the U.S. v. Duke*, 343 F. Supp. 3d 1050, 1080 (D.N.M. 2018). The Third Circuit found twenty-three hours for a "complex fee petition" was reasonable. *See Danny Kresky Enters. Corp. v. Magid*, 716 F.2d 215, 219 (3d Cir. 1983).

---

[16] *See Disability Rights N.Y. v. N.Y. State Dep't of Corr.*, No. 20-cv-1487, 2024 U.S. Dist. LEXIS 154972, at *1 & *7 (N.D.N.Y. Aug. 28, 2024) (reducing attorneys' fees where Plaintiff "won half of its motion for a preliminary injunction" but "did not otherwise prevail"—and thereafter reducing the award from the requested amount of $357,523.90 to $20,193.75 ).

Disability Rights billed about fifty hours for their fee petition. *See* **Doc. 61-4 at 9–10**; **Doc. 69-1**. This is excessive.

Looking at *Case*, for example, eighty hours was reasonable. But in that case, "[t]he parties litigated the case thoroughly." 157 F.3d at 1246. The parties had "a contentious discovery process," "produced 3,263 pages of documents," "deposed twenty-seven witnesses," "filed motions for summary judgment," filed motions to strike and dismiss, "hired expert witnesses," and "requested reconsideration of three of the district court's orders." *Id.* at 1246–47. This case is not like *Case*. The memorandum in support is shorter. The attorneys' affidavits are not "lengthy." *Case*, 157 F.3d at 1255. Case law was not "cop[ied] . . . from Westlaw for submission" (as was required back in the 1990s). *Id.* This was not a "400 page[] long" fee petition. *Id.* Rather, Disability Rights submitted: (1) a twenty-page motion with sixty-eight pages in billables, and (2) a sixteen-page reply with five additional pages of documentation. Fifty hours is too much, here. *See Disability Rights N.Y. v. N. Colonie Bd. of Educ.*, No. 14-cv-744, 2017 U.S. Dist. LEXIS 69593, at *18 (N.D.N.Y. May 8, 2017) (finding that "more than fifty (50) hours to prepare a motion for attorneys' fees is unreasonable"); *Esperance v. Vilsack*, No. 20-cv-5055, 2025 U.S. Dist. LEXIS 9292, at *27–29 (D.S.D. Jan. 15, 2025) (finding that 79.7 hours for the attorney fee petition was "unreasonable" even though "litigation spann[ed] over five years").

As United States District Judge Jed Rakoff[17] stated: "[P]laintiffs' attorneys did not need to bill 55.5 hours for preparing the motion [for attorneys' fees]. Given that recovery was virtually

---

[17] Incidentally (albeit, maybe immaterial for present purposes), Judge Rakoff is known for being a "feeder judge" to the Supreme Court. *See* David Lat, *Supreme Court Clerk Hiring Watch: Ranking the Non-Traditional Feeder Judges*, ABOVE THE LAW (Aug. 20, 2015), https://abovethelaw.com/2015/08/supreme-court-clerk-hiring-watch-non-traditional-feeder-judges/ [https://perma.cc/ETH2-RDJ4]; *see also* Josh Blackman, *Which Circuit Judges and Circuit Courts Feed the Most SCOTUS Clerks?*, THE VOLOKH CONSPIRACY (Aug. 12, 2021), https://reason.com/volokh/2021/08/12/which-circuit-judges-and-circuit-courts-feed-the-most-scotus-clerks/ [https://perma.cc/HD5Q-HCDS].
All this to say, the Court finds Judge Rakoff's point is well-taken.

assured, all that the attorneys needed to do was collect and analyze their records. This task should not reasonably have taken longer than ten hours." *Ret. Plan of the Unite Here Nat'l Ret. Fund v. Kombassan Holding A.S.*, No. 06-cv-5861, 2011 U.S. Dist. LEXIS 133016, at *5 (S.D.N.Y. Nov. 14, 2011).

## CONCLUSION

Even though the Court finds the billable rates are reasonable, the total expended hours were not. This was not an extensively litigated case. A stay—and settlement discussions—began almost immediately. Discovery was minimal. Only one motion was litigated. And there was no trial. Against this backdrop, Disability Rights' billing more than 600 hours is unreasonable.

**IT IS THEREFORE ORDERED** that Disability Rights' Motion for Attorney's Fees (**Doc. 61**) is **GRANTED in part** for a total amount of $71,476. *See supra* ¶ II.C. (chart).

**IT IS FURTHER ORDERED** that because all claims and issues have been resolved, the case is hereby **DISMISSED**. That being said, the parties are **GRANTED leave** until the termination of this agreement on December 31, 2025, to file a motion to reopen the matter to enforce the terms of the settlement agreement as provided in **Doc. 59 at ¶¶ 8, 10, & 12**.

**IT IS FINALLY ORDERED** that Defendants' Motion to Dismiss (**Doc. 9**) is **DENIED as MOOT**.[18]

**IT IS SO ORDERED**.

/s/
_____
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE

---

[18] *See* **Doc. 69 at 8 n.5** (noting that "Defendants entered into a settlement agreement that was incorporated into a federal court order," and the motion to dismiss issue "is waived").